OPINION
John W. Ward, III, was indicted by a Franklin County grand jury on September 22, 2000. He was charged with one count each of domestic violence and abduction based upon allegations that he had harmed his girlfriend Tina Rockhold and that he restrained her when she tried to get away from him. The offenses, both felonies as indicted, occurred on September 4, 2000.
Eventually, Mr. Ward waived his right to a jury trial and, in August 2001, was tried by the judge sitting as the trier of fact. The judge found him guilty of both charges and scheduled the case for a sentencing hearing at a later date. The court also ordered preparation of a presentence investigation report.
The trial court conducted a sentencing hearing on October 18, 2001. The judge ultimately sentenced Mr. Ward to a two and one-half year period of community control, with an "Intensive Supervision Program;" 180 days in the county jail with work release privileges; and various treatment-oriented requirements, including, inter alia, "drug/alcohol testing and treatment" and "domestic violence and anger management counseling." (Judgment Entry at 2; Tr. 5)
John W. Ward, III (hereinafter "appellant") has timely appealed his convictions, assigning two errors for our consideration:
ASSIGNMENT OF ERROR NUMBER ONE
 THE TRIAL COURT ERRED WHEN IT ENTERED JUDGMENT AGAINST THE DEFENDANT WHEN THE EVIDENCE WAS INSUFFICIENT TO SUSTAIN THE CONVICTIONS AND THE CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE PRESENTED.
 ASSIGNMENT OF ERROR NUMBER TWO THE DEFENDANT DID NOT RECEIVE A FAIR TRIAL DUE TO THE INEFFECTIVE ASSISTANCE OF COUNSEL FOR FAILING TO ARGUE THAT THE DEFENDANT'S ACTIONS WERE JUSTIFIED IN THE DEFENSE OF HIS PROPERTY AND PERSON.
By his first assignment of error, appellant asserts that the evidence before the trial court should not have resulted in convictions because the evidence was insufficient to support findings of guilt or because the greater weight of the evidence supported a finding that appellant was not guilty.
Preliminarily, we set forth the similar, yet distinct, standards by which we are bound in reviewing the first assignment of error, which challenge both the sufficiency of the evidence, and the manifest weight of the evidence.
This court has consistently followed and applied the well-established standards in reviewing purported errors related to sufficiency and weight of the evidence. "The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different." State v. Thompkins (1997), 78 Ohio St.3d 380, paragraph two of the syllabus. In Thompkins, the court explained at length the distinctions between the two standards:
 With respect to sufficiency of the evidence, `"sufficiency" is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.' Black's Law Dictionary (6 Ed. 1990) 1433. See, also, Crim.R. 29(A) (motion for judgment of acquittal can be granted by the trial court if the evidence is insufficient to sustain a conviction). In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. State v. Robinson (1955), 162 Ohio St. 486 * * *. In addition, a conviction based on legally insufficient evidence constitutes a denial of due process. Tibbs v. Florida (1982), 457 U.S. 31, 45, * * * citing Jackson v. Virginia (1979), 443 U.S. 307 * * *.
When reviewing the sufficiency of the evidence to support a conviction, an appellate court must review the record to determine "whether the evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. In Jenks, the Supreme Court set forth the stringent standard of review to be applied in a sufficiency analysis:
 "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
In contrast, as explained in Thompkins, supra, a manifest weight analysis is slightly different:
 Although a court of appeals may determine that a judgment of a trial court is sustained by sufficient evidence, that court may nevertheless conclude that the judgment is against the weight of the evidence. Robinson, supra, 162 Ohio St. at 487 * * *. Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief.' (Emphasis added.) Black's, supra, at 1594.
 When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the manifest weight of the evidence, the appellate court sits as a '"thirteenth juror"' and disagrees with the factfinder's resolution of the conflicting testimony. Tibbs, 457 U.S. at 42 * * *. See, also, State v. Martin (1983), 20 Ohio App.3d 172, 175 * * * (`The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.')
Pursuant to the foregoing standards, we examine the record in a light most favorable to the prosecution to determine if the prosecution sufficiently proved beyond a reasonable doubt each element of the offenses charged, and/or whether the jury "lost its way" in convicting appellant such that a manifest miscarriage of justice occurred.
Turning now to appellant's first assignment of error, appellant contends that the prosecution failed to prove by sufficient evidence the elements of the offenses of which he was convicted, domestic violence and abduction. As indicated infra, appellant further contends that the verdicts were against the manifest weight of the evidence.
As charged in the indictment, the elements of domestic violence are set forth in R.C. 2919.25(A) as follows:
 No person shall knowingly cause or attempt to cause physical harm to a family or household member.
The offense was charged as a fifth-degree felony because appellant had previously been convicted of assault, "a violation of a municipal ordinance [Columbus City Code Section 2903.13] that is substantially similar to domestic violence * * * involving a person who was a family or household member at the time of the violation * * *." R.C. 2919.25(D).
The elements of abduction, a third-degree felony, are set forth in R.C. 2905.02. As charged in the indictment, the statute provides:
 (A) No person, without privilege to do so, shall knowingly do any of the following:
* * *
 (2) By force or threat, restrain the liberty of another person, under circumstances which create a risk of physical harm to the victim, or place the other person in fear[.]
Applying the foregoing to the facts of this case, we turn now to the evidence adduced at trial.
The evidence before the trial court consisted of the testimony of four witnesses and three exhibits. The witnesses for the state of Ohio were Tina Rockhold; Tracy Braithwaite, who is Tina's sister; and, Columbus Police Officer Christopher Capretta. The exhibits, which were offered by the state, consisted of two photographs of Tina's arms and a stipulated judgment entry of appellant's prior conviction for assault. Appellant testified on his own behalf.
Tina Rockhold testified that she and appellant were living together in September 2000 and that they were having disagreements about appellant seeing another woman. She claimed that on September 4, 2000, she was in the bathroom of their residence when appellant came in and started choking her. She got away from him and they began screaming at each other. She eventually threw some of his things into a fire in the fireplace and he responded in kind.
The fight then returned to being a physical confrontation, with appellant grabbing Ms. Rockhold's arms and restraining her. She claimed that he also threw her against a wall. Eventually, her sister, Tracy Braithwaite, and Ms. Braithwaite's boyfriend arrived, which resulted in Tina being released and appellant leaving.
On cross-examination, Ms. Rockhold acknowledged that she had been drinking on the day of the altercation, but she denied that she had an alcohol problem and that alcohol consumption was responsible for the altercation.
Tracy Braithwaite testified that she received a call from Tina Rockhold's daughter, who had called the house where appellant and Tina lived and had been told falsely that Tina was not home. Ms. Braithwaite and her boyfriend went over to check things out at the daughter's request. When they arrived, they heard a lot of loud arguing through the locked door. They pounded on the door and Tina yelled, "He won't let me come to the door." Ms. Braithwaite and her boyfriend also heard smoke detectors going off.
Ms. Braithwaite's boyfriend grabbed a large rock and tried to break the door open. Before he had broken the door down, appellant had finally unlocked the door. Appellant then left.
Tracy Braithwaite described Tina as crying and upset. Tina's arms were red and swollen. The lower floor of the house was a mess.
The Columbus Division of Police was called and police officers responded. Christopher Capretta was one of the officers who arrived at the scene in response to the call. He interviewed Tina Rockhold and her sister, Tracy Braithwaite. He also took the photographs of Tina's arms, which photos were admitted into evidence. He also took an official police report.
Officer Capretta noted that Tina Rockhold's breath smelled of alcohol, but he recalled her as being clear and precise when she recounted her version of what had occurred earlier.
On cross-examination, Officer Capretta acknowledged that his report did not include any claim by Tina Rockhold that she had been choked and that a box on the report marked "choked" was not checked.
Appellant testified that after Tina woke up that morning, he took her to work. She could not drive because her operator's license had been suspended.
After work, appellant picked Tina up and took her to buy a twelve-pack of beer. He claimed that she drank at least three on the way home. He drank a couple of beers after they got home, and Tina continued to drink.
Appellant later went to the store to get milk, cigarettes, and more beer. When he returned home, he smelled smoke.
When appellant entered the house, smoke was billowing from the fireplace, and Tina was sitting in front of the fireplace. She had taken a box of his personal items, including pictures of his children, and set the items on fire.
Appellant tried to retrieve his property from the fire, as he recalled. Tina then swung a beer bottle at him and called him an "SOB." Appellant restrained her and took the bottle away from her. She then grabbed an ashtray and tried to throw it at him, but he blocked the ashtray.
Appellant denied any other physical contact with Tina. He claimed that he had not been back from the store for more than two minutes when all of this occurred. Then he heard someone at the front door. Tina's sister, Tracy, and her boyfriend had arrived.
The testimony from Tina Rockhold was more than sufficient to satisfy the elements of domestic violence and abduction, especially when reinforced by the photographs of her arms. Thus, that part of the first assignment of error which alleges that the evidence was insufficient to sustain the convictions is overruled.
Appellant's testimony could be given little or no weight because it does not account for the time necessary for Tracy and her boyfriend to be alerted to the potential problem and respond by going to Tina's house. There is no reason to doubt that Tracy and her boyfriend responded to a call from Tina's daughter asking them to check on her mother's welfare.
Since the trial court could assess little or no weight to appellant's testimony, the convictions were supported by the weight of the evidence.
Given the state of this record, appellant's convictions for domestic violence and abduction were supported by sufficient evidence, and the convictions were not against the manifest weight of the evidence.
The first assignment of error is overruled.
In the second assignment of error, appellate counsel alleges that trial counsel rendered ineffective assistance because trial counsel did not argue that the harm inflicted upon Tina Rockhold was inflicted during the legal protection of appellant's property and person.
Trial counsel did, in fact, argue self-defense when he argued:
 * * * When she tried to strike him, he did what, in my opinion, any of us would have done. He attempted to avoid being hit. In doing so he bruised her. * * *" [Tr. 87.]
Appellant did not claim in his testimony that he grabbed Tina Rockhold to protect his property from further destruction. Thus, no factual basis for a defense-of-property argument was present.
Appellant has not demonstrated that his trial counsel's performance was ineffective in any way.
The second assignment of error is overruled.
Both assignments of error having been overruled, the judgment of the trial court is affirmed.
Judgment affirmed.
KLATT and BRYANT, JJ., concur.